# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEL MARIN,<br><br>                Plaintiff,<br><br>vs.<br><br>SAEID EIDGAHY, et al.,<br><br>                Defendants. | CASE NO. 10 CV 1906 MMA (RBB)<br><br>**ORDER:**<br><br>**GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**;<br><br>[Doc. No. 22]<br><br>**DENYING PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT AS MOOT**<br><br>[Doc. No. 25] |

Currently pending before the Court is Defendants Saeid Eidgahy, Candice Klingbeil, Anne Geller, Elizabeth Armstrong, Constance M. Carroll, Peter Z. Schiesche, Maria Nieto Senour and Rich Grosch's (collectively, "Defendants")[1] motion to dismiss Plaintiff Mel Marin's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. [Doc. No. 22-1.]

---

[1] Only the above-named eight defendants have been served, and now move to dismiss Plaintiff's FAC; Plaintiff has not served defendants Tim McGrath, Peter White and Mary Schwandt. Because these three defendants have not yet appeared, unless otherwise indicated, the Court's use of the term "Defendants" herein refers only to the eight defendants who have appeared and moved to dismiss the FAC.

Plaintiff has also submitted a motion for leave to file a second amended complaint. [Doc. No. 25.] The Court in its discretion found both motions suitable for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss, and **DENIES** Plaintiff's motion for leave to file an amended complaint **AS MOOT**.

## BACKGROUND

On March 28, 2011, Plaintiff filed a First Amended Complaint ("FAC") against eleven named Defendants for alleged violations of Plaintiff's civil and constitutional rights, as well as state-based tort claims. [FAC, Doc. No. 20.][2] Plaintiff generally avers that he is a male student enrolled with the San Diego Community College District. [FAC ¶3.] In August and September 2010, students in one of Plaintiff's classes allegedly harassed and assaulted him because "he is 40 years older than [them]." [*Id.* ¶¶4, 6, 29.] When Plaintiff reported the conduct to the professor, Defendant Klingbeil, she allegedly refused to intervene to correct the situation. [*Id.* ¶5, 7-8.] Plaintiff informed Klingbeil he intended to "formally complain" about her refusal to protect Plaintiff's right to participate in the class without being harassed by the other students. [*Id.* ¶9.] In response, Klingbeil allegedly punished Plaintiff by preventing him from taking two exams, causing him two failing grades, and threatened to expel Plaintiff from class if he did not "force" the other students to work with him. [*Id.* ¶¶8, 10.] Plaintiff further asserts Defendant Klingbeil indicated she heard profanity in the classroom and chose to punish Plaintiff for it in retaliation for his complaints, because Klingbeil did not impose any similar punishment upon a female student who had used profanity. [*Id.* ¶11.]

Plaintiff asserts he informed Department Chair, Defendant Geller, and the Dean, Defendant Eidgahy, about Klingbeil's refusal to control the other students in her class, but both individuals failed to remedy the situation. [*Id.* ¶¶12-14.] Plaintiff then complained to the college's President, Defendant Armstrong, but Plaintiff's grievances were again ignored. [*Id.* ¶16.] Next, Plaintiff met

---

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). All facts cited are taken from Plaintiff's FAC unless otherwise noted.

1 with Vice-President, Defendant McGrath,[3] and asked to be transferred to a different class since
2 Klingbeil refused to control the students in her classroom. [*Id*. ¶17.] Defendant McGrath
3 allegedly refused to transfer Plaintiff or intervene on his behalf. [*Id*.]

4 Thereafter, Plaintiff wrote a letter to Defendants Carroll, Schiesche, Schwandt,[4] Nieto
5 Senour, Rich and Grosch requesting an investigation into Professor Klingbeil's wrongful conduct,
6 and permission to transfer to another class. [*Id*. ¶18.] Plaintiff's letter went unanswered. [*Id*.
7 ¶19.]

8 Accordingly, Plaintiff filed the present action alleging nine causes of action for violations
9 of his civil rights, the First and Fourteenth Amendments of the United States Constitution, sexual
10 discrimination, age discrimination, interference with contract, and interference with prospective
11 economic relations.[5] Plaintiff seeks over $3 million in compensatory and punitive damages on the
12 ground that Defendants' conduct caused him to lose a year of schooling, and thereby denied him
13 the opportunity to apply to physician assistant programs and begin a planned twenty-year career in
14 the medical field. [*Id*. ¶80.]

15 Defendants move to dismiss Plaintiff's various civil rights claims on the ground that the
16 school district employees are state actors immune from suit under the Eleventh Amendment.
17 [Doc. No. 22-1, p.3-5.] Defendants assert Plaintiff's sexual discrimination claim fails because it is
18 based on a statute that specifically prohibits such claims against individual employees, and his age
19 discrimination claim fails because Plaintiff did not exhaust his administrative remedies. [*Id*. at
20 p.5-6.] Finally, Defendants assert Plaintiff's interference with contract and prospective economic
21 advantage claims should be dismissed because his allegations are vague and speculative. [*Id*. at
22 p.7-9.]
23 / / /

---

[3] The docket reflects Plaintiff has not served Defendant Tim McGrath.

[4] The docket reflects Plaintiff has not served Defendant Mary Schwandt. An unexecuted service of summons was returned by the U.S. Marshal Service, noting the "director of legal services stated this person does not exist." [Doc. No. 19.]

[5] Plaintiff's FAC erroneously labels two separate claims as the "third cause of action." [*See* Doc. No. 20, p.6-7.] The Court therefore refers to the claims in numerical order as they appear in the FAC, irrespective of the claim number specified by Plaintiff.

## LEGAL STANDARD

A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court reviews the content of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 129 S. Ct. at 1950.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557). In addition, the Court has a duty to liberally construe a *pro se's* pleadings. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). In giving liberal interpretation to a *pro se* complaint, however, the court may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

/ / /

/ / /

# DISCUSSION

## I. ELEVENTH AMENDMENT IMMUNITY

As a preliminary matter, Defendants argue the Court lacks jurisdiction over Plaintiff's civil rights claims because Defendants are immune from suit under the Eleventh Amendment.[6] "The Eleventh Amendment of the United States Constitution prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent." *Natural Res. Def. Counsel v. Santa Monica Baykeeper, Inc.*, 96 F.3d 420, 421 (9th Cir. 1996) (italics and citation omitted). This immunity "extends to state agencies and to state officers, who act on behalf of the state," including community college districts. *Id.* (citation omitted); *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972 (9th Cir. 1994) (community college districts are entitled to Eleventh Amendment immunity as dependent instrumentalities of the state of California) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). Defendants argue they are entitled to immunity because Plaintiff alleges wrongful conduct arising from actions Defendants could only have taken in their official capacities. [Doc. No. 22-1, p.4.] For example, Defendants allegedly refused to allow Plaintiff to take exams, commence a formal grievance process, or transfer to another class; Defendants argue these actions could not have been taken in their individual capacities. [*Id.*] Accordingly, Defendants assert Plaintiff's civil rights claims should be dismissed because the immunity enjoyed by the school district extends to its officers acting in their official capacities.

In response, Plaintiff argues his civil rights claims are properly asserted against Defendants in their individual, not official, capacities. [Doc. No. 23, p.2.] The FAC does not allege whether Plaintiff is pursuing Defendants in their individual or official capacities; Plaintiff's use of the term "personally" in the caption is unhelpful. [*Id.*] Plaintiff is, however, correct that the Court presumes his causes of action for alleged violations of his civil rights under 42 U.S.C. § 1983 are against Defendants in their *individual* capacities.

---

[6] Plaintiff asserts the Court has jurisdiction under 42 U.S.C. § 1983 [FAC ¶1], and then alleges seven causes of action for violation of his "civil rights" by virtue of Defendants' alleged violations of his Constitutional rights as well as rights protected by federal and state laws. For purposes of resolving the pending motions, the Court assumes Plaintiff intended each of his "civil rights" claims to arise under section 1983.

"[A] section 1983 suit against state actors necessarily implies a suit against the defendants in their personal capacities." *Cerrato*, 26 F.3d at 973 n.16. Section 1983 creates a private right of action against any "person" who under color of state law deprives an individual of his "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. This civil rights statute was not intended to abrogate the states' Eleventh Amendment immunity, as the plain language of the statute only authorizes actions against "persons." *See Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Further, "state officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). The Court therefore construes Plaintiff's civil rights claims as causes of action against Defendants in their individual capacities.

In addition, "a state official who violates federal law is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct." *Demery*, 735 F.2d at 1146 (emphasis in original) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)).

> [A] state cannot authorize a state officer to violate the Constitution and laws of the United States. Thus, an action by a state officer that violates federal law is not considered an action of the state, and therefore, is not shielded from suit by the state's sovereign immunity. . . . a plaintiff may bring suit in federal court against a state officer accused of violating federal law.

*Natural Res. Def. Counsel*, 96 F.3d at 422 (citations omitted). Accordingly, to the extent Plaintiff's claims arise under section 1983, dismissal at this stage of the litigation based on Eleventh Amendment immunity is not appropriate.

## II. CIVIL RIGHTS CLAIMS

Plaintiff's civil rights claims, however, are still subject to dismissal. Although Plaintiff sets forth seven separate claims for violations of his civil rights, he does not specify which individual defendants are responsible for the distinct violations. "A person subjects another to the deprivation of a constitutional right . . . if he does an affirmative act, participates in another's

affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). Thus, to state a claim for monetary damages under section 1983, Plaintiff must allege that each Defendant committed some act, or failed to act in some way, which caused his injury. *See Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id*. at 633 (citations omitted). Moreover, respondeat superior or vicarious liability is not available in a civil rights action, absent a state law that authorizes its application. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991).

Accordingly, because the FAC names eleven Defendants in their personal capacities, Plaintiff must link each Defendant *to each claim* by providing facts that show the basis for liability for each individual Defendant. Plaintiff should not refer to them as a group (e.g., "the Defendants"); rather, he should identify each involved person by name, and link each of them to the claim(s) by explaining what each Defendant did or failed to do that caused a violation of the particular constitutional right at issue. *See Leer*, 844 F.2d at 634 (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that a defendant proximately caused deprivation of a federally protected right). The Court acknowledges Plaintiff identifies some specific actions taken by certain individual defendants in his "General Allegations" section of the FAC. [*See* FAC ¶¶5-17.] However, these allegations do not adequately apprise the eleven individual Defendants as to which of the seven distinct civil rights claims they must defend against. *See Melegrito v. Citimortgage, Inc.*, 2011 U.S. Dist. LEXIS 60447 *19 (N.D. Cal. Jun. 6, 2011) ("Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief.") (citations omitted). Plaintiff's vague allegations that repeatedly group all Defendants together

///

under each claim for relief are not sufficient.[7] *See In re Sagent Technology, Inc.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) ("complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act"). Accordingly, Plaintiff's section 1983 claims, including the first, second, third, fourth, fifth, sixth, and eighth causes of action, are subject to dismissal without prejudice. Claims three and four are further deficient for the following reasons.

### (A)    Title IX Claim for Sexual Discrimination (claim three)

Defendants assert Plaintiff's third cause of action for violation of his civil rights due to "sexual discrimination for unequal application of rules" should also be dismissed because it is premised on 20 U.S.C. § 1681 ("Title IX"), which is inapplicable to individual employees. [Doc. No. 22-1.] Conversely, Plaintiff argues Title IX can be asserted against individual defendants, and in any event, his sexual discrimination claim is not limited to Title IX. [Doc. No. 23, p.3.] The Court disagrees with both of Plaintiff's assertions. As an initial matter, while sex discrimination claims may arise on various grounds, Plaintiff's FAC only alleges sex discrimination under Title IX. The Court will not consider the propriety of any potential additional claims not currently alleged in the FAC, and therefore only addresses Title IX here.

"[A] recipient of federal funds may be liable in damages under Title IX only for its own misconduct." *Davis v. Monroe County Board of Educ.*, 526 U.S. 629, 640 (1999). "Title IX reaches institutions and programs that receive federal funds . . . [and] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 129 S. Ct. 788, 796 (2009) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)). Here, Plaintiff alleges, generally, that all eleven Defendants discriminated against him by "punishing [him] for the same conduct executed by a female but refused to destroy the grade, class and career of the female student . . . ." [FAC ¶33.]

---

[7] *See, e.g.*, FAC ¶24 ("refusal of the defendants to allow plaintiff to take the same course *elsewhere* in the college . . . shows their intent to hurt plaintiff") (emphasis in original); ¶29 ("the defendants have another policy opposite their normal policy"); ¶33 ("defendants' conduct discriminated against plaintiff by punishing plaintiff for the same conduct executed by a female"); ¶36 ("by reason of plaintiff's age defendants joined in with students and teacher to interfere with plaintiff's course"); ¶41 ("defendants created a surprise rule"); ¶51 ("Defendants were apprized that there [sic] procedure to lynch whomever a teacher picks on any given day for any reason, was and is illegal").

1  As discussed above, although the FAC does not allege whether Plaintiff is suing Defendants in
2  their individual or official capacities, Plaintiff argues in his opposition that the action is against
3  each Defendant individually and personally, as specified in his caption. [Doc. No. 23, p.2.]  In
4  addition, the Court presumes Plaintiff's Title IX civil rights claim is against the state actors in their
5  personal capacities.  Accordingly, Plaintiff's third cause of action under Title IX is barred to the
6  extent Plaintiff seeks damages against Defendants in their individual capacities.

7  Plaintiff's reliance on *Davis*, 526 U.S. 629, for the proposition that a Title IX claim can be
8  maintained against individuals is misplaced. [Doc. No. 23, p.23.]  Although *Davis* involved a suit
9  against a county school board and school officials, the lower court dismissed plaintiff's "claims
10 against individual defendants on the ground that only federally funded educational institutions are
11 subject to liability in private causes of action under Title IX." *Davis*, 526 U.S. at 636.  The
12 dismissal of the individual defendants was not at issue on appeal.  Rather, the plaintiff challenged
13 the lower court's dismissal of the Board.  *Id*. at 636.  While the Supreme Court necessarily
14 discussed the actions and omissions of certain Board members, as the Board can only act through
15 its members, the Title IX action on appeal was clearly against the Board as an entity, not
16 individual defendants.  *Id*. at 641 ("petitioner attempts to hold the Board liable for its *own* decision
17 to remain idle").  Indeed, the parties did not dispute the Board—not its members—"is a recipient
18 of federal education funding for Title IX purposes."  *Id*. at 639.  Here, Plaintiff has not named the
19 school or the school board as a defendant.  Nor has Plaintiff provided any indication that his
20 allegations are against any of the Defendants in their *official* capacities.  Because Plaintiff's Title
21 IX allegations, as pled, are only against the individually named Defendants in their *personal*
22 capacities, Plaintiff's Title IX claim is subject to dismissal.  *See also Fields v. Voss*, 2010 U.S.
23 Dist. LEXIS 9685 *11-13 (E.D. Cal. Feb. 4, 2010) (collecting cases, "While the Ninth Circuit has
24 not addressed the issue, other circuit courts and district courts have ruled that individual officials
25 are not the recipients of federal funds so as to be liable in their personal capacities under
26 legislation which is enacted pursuant to Congress' spending power.").

27
28 / / /

**(B)    Claim for Age Discrimination (claim four)**

Defendants assert Plaintiff's fourth cause of action for age discrimination under 42 U.S.C. § 6101, known as the Age Discrimination Act of 1975 ("ADA"), should be dismissed without leave to amend because Plaintiff does not allege he exhausted his administrative remedies. [Doc. No. 22-1, p.6.] The Court agrees.

Section 6101 of the ADA prohibits "discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C § 6101.

> [However,] to bring an age discrimination claim against a recipient of federal financial assistance, . . . a plaintiff must satisfy two requirements. First, the plaintiff must exhaust administrative remedies. 42 U.S.C. § 6104(f); 34 C.F.R. § 110.39(a). Second, the plaintiff 'shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed.'

*Parker v. Bd. of Supervisors Univ. of Louisiana-Lafayette*, 296 Fed. Appx. 414, 417-18 (5th Cir. 2008) (citing 42 U.S.C. § 6104(e)(1); 34 C.F.R. § 110.39(b)(3)(iii)). To exhaust his administrative remedies, Plaintiff was required to file a complaint with the United States Department of Education, Office for Civil Rights ("OCR"), and the OCR must have either: (i) made no finding within 180 days of that filing, or (ii) made a finding in favor of the school district. *See id*. at 418 (citing 34 C.F.R. § 110.39(a)(1)-(2)); 42 U.S.C. § 6104(f); *Santos v. Merritt College*, 2008 U.S. Dist. LEXIS 75496 *6 (N.D. Cal. July 1, 2008). Because Plaintiff has not alleged compliance with the exhaustion and notice requirements of the ADA, the Court lacks jurisdiction over his purported claim for age discrimination. *See Popkins v. Zagel*, 611 F. Supp. 809, 812 (C.D. Ill. 1985).

Plaintiff argues "defendants' exhaustion argument is a meaningless ritual" and does not warrant dismissal of his age discrimination claim. [Doc. No. 23, p.4.] First, Plaintiff asserts he made the required "presentation" and the "attached records show plaintiff served the federal agencies that the statute requires . . . ." [*Id*.] The Court disagrees. The record does not reflect, nor does the FAC allege, that Plaintiff submitted a complaint to the OCR *prior* to filing his action in federal court. The FAC also does not allege Plaintiff sent notices to the Secretary of Health and

Human Services, the Attorney General of the United States, and the defendants thirty days *prior* to commencement of the action, as required by 42 U.S.C. § 6104(e)(1).

The Court acknowledges Plaintiff submitted a declaration on April 22, 2011 [Doc. No. 25-1], which indicates he sent certified copies of letters regarding his ADA claim to the Secretary of Health and Human Services and the Attorney General. However, all the certified mail receipts indicate the notices were sent *after* Plaintiff filed his FAC and *after* Defendants filed their motion to dismiss. Exhaustion is a *prerequisite* to filing suit. Here, not only did Plaintiff fail to provide Defendants with proper notice pursuant to 42 U.S.C. § 6104(e), there is nothing in the record to indicate that he has complied with the additional procedures for exhaustion set forth in the applicable implementing regulations (i.e. filing a complaint with the OCR). *See* 34 C.F.R. § 110.39(a). Thus, Plaintiff's declaration and attached exhibits are not adequate to avoid dismissal of his age discrimination claim under Section 6101 *et seq*.

Second, Plaintiff asserts the U.S. Marshal Service already served Defendants with a copy of the complaint, so it is a "meaningless ritual to require re-mailing what they already have." [Doc. No. 23, p.5.] Plaintiff misses the point. He is required to file a complaint with the OCR and to serve the Secretary of Health and Human Services, the Attorney General of the United States, *and* the Defendants with notice of his claims *before* initiating a civil action. A civil complaint is, by definition, insufficient; allowing Plaintiff's age discrimination claim to proceed would completely vitiate the notice and exhaustion requirements.

Third, Plaintiff asserts he does not need to show exhaustion because it would have been futile. [*Id*.] The Court is not persuaded. Plaintiff argues "after two weeks of denial of the class in September 2010 and two more weeks of lock-out, nothing anyone could do could save it: two tests had already been given that plaintiff was not allowed to take in order to punish him with two F grades from which he could not possibly recover, and the subject material for the next tests was denied him. So plaintiff was *de facto* dropped completely from the class." [*Id*. (emphasis in original).] But in the following paragraph, Plaintiff effectively concedes that further damage could have been prevented if Defendants agreed to pay for Plaintiff's summer living expenses and summer classes. [*Id*.] By failing to file a complaint with the OCR and provide the proper entities

and individuals notice as required by statute, Plaintiff denied Defendants the opportunity to remedy the perceived discriminatory conduct. That Plaintiff spoke with or otherwise wrote letters to the individual Defendants regarding the challenged conduct, does not excuse his failure to exhaust his administrative remedies and provide notice to the Secretary of Health and Human Services and the Attorney General of the United States before filing his civil action, as required. Accordingly, Plaintiff's fourth cause of action for age discrimination under 42 U.S.C. § 6101 is subject to dismissal without prejudice, but without leave to amend. Because exhaustion is a prerequisite to suit, Plaintiff cannot remedy his failure to exhaust by attempting to comply with the statutory requirements *after* the civil complaint has been filed. Thus, Plaintiff cannot pursue his ADA claim in the present action.

Plaintiff's section 6101 claim also fails for a second, independent reason.

> The Age Discrimination Act provides that 'no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, any program or activity receiving [f]ederal financial assistance.' 42 U.S.C. § 6102. Although the Act authorizes a private right of action 'to enjoin a violation of this Act by any program or activity receiving Federal financial assistance,' the Act does not authorize the recovery of monetary damages. 42 U.S.C. § 6104(e)(1).

*Rasmussen v. State DMV*, 2008 U.S. Dist. LEXIS 120895 *14-15 n.3 (C.D. Cal. Nov. 25, 2008) (citing *Montalvo-Padilla v. University of Puerto Rico*, 498 F. Supp. 2d 464, 468 (D.P.R. 2007) (noting that the private cause of action created by the Age Discrimination Act "is limited to injunctive relief and the recovery of attorney's fees")); *Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 383 (M.D. Pa. 2001) ("the [Act] cannot support an action for damages"). Because Plaintiff only seeks monetary damages from Defendants, he cannot maintain an age discrimination claim under section 6101. *Id.*

**III.   INTERFERENCE WITH CONTRACT**

Defendants assert Plaintiff's seventh cause of action for interference with contract should be dismissed because the allegations fail to state a claim upon which relief can be granted. [Doc. No. 22-1, p.6-7.] Defendants argue Plaintiff has not adequately alleged the existence of a viable contract between himself and the school district.

To state a claim for interference with contract under California law, Plaintiff must allege: (1) the existence of a valid contract between himself and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional (or negligent) "acts designed to induce a breach or disruption of the contractual relationship;" (4) "actual breach or disruption of the contractual relationship;" and (5) "resulting damage." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 n.5 (1994) (citation omitted). Thus, this cause of action may only lie against "*noncontracting* parties who interfere with the performance of a contract." *Id.* at 513 (citation omitted) (emphasis in original).

Here, Plaintiff alleges he has "an actual or implied contract with the community college" which requires the college to make its facilities equally available to students. [FAC ¶55.] Defendants allegedly interfered with that contract by preventing Plaintiff from completing his course or allowing him to take it elsewhere within the college. [*Id.* at ¶¶57-59.] Defendants dispute the existence of a contract, and argue that even if a contract exists, Plaintiff's allegations are too vague and unclear to state a claim for relief. [Doc. No. 26, p.5-6.]

Under California law, "the act of matriculation, together with payment of required fees" may create a contract between the student and the institution. *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 824 (2007). However, Plaintiff's FAC does not contain sufficient allegations to establish this type of contractual relationship. Plaintiff summarily alleges "he has an actual or implied contract with the community college." [FAC ¶55.] The Court need not accept this legal conclusion as true, as it is not supported by the necessary factual allegations. *Ashcroft*, 129 S. Ct. at 1949. Nowhere does the FAC identify the community college by name, nor does Plaintiff allege what fees he paid, if any, nor what specific services the school was required to provide in return. Absent this basic information, even assuming Plaintiff's factual allegations are true, the Court is unable to determine whether a contract exists with which Defendants could have interfered. Accordingly, Plaintiff's seventh cause of action for interference with contract is subject to dismissal without prejudice.

/ / /

### IV. INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Defendants likewise argue that Plaintiff's ninth cause of action for "interference with prospective economic relations" fails to state a claim upon which relief can be granted. [Doc. No. 22-1, p.8.] Defendants assert Plaintiff's claim is "purely speculative" and too tenuous to support a viable claim for relief. [*Id.*] In the FAC, Plaintiff asserts he "had a prospective contract for admission to the New York Institute of Technology, and four other colleges to enter their physician assistant programs in fall 2011, for the purpose of graduating from one and entering that field of medicine to earn $100,000 a year in late 2013." [FAC ¶67.] "In order to meet that schedule, plaintiff had to complete the course in fall 2010 that he was blocked from taking by the defendants' actions, because *that class was a prerequisite for subsequent courses that must be completed before he can apply to these PA programs* in time." [*Id.* ¶68 (emphasis added).]

California law recognizes a cause of action for "tortious interference with business relations." *Alpha Dist. Co. v. Jack Daniel Distillery*, 454 F.2d 442, 449 (9th Cir. 1972). The California Supreme Court has held that a plaintiff must allege the following elements to state a claim for interference with prospective economic advantage: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 n.2 (1990) (citations omitted).

To satisfy the first element, there must be an existing relationship between the plaintiff and the third party, such that the plaintiff could reasonably anticipate an identifiable economic benefit from the relationship. While the plaintiff need not have a formal agreement with the third party to state a claim for interference with economic advantage, the plaintiff must identify a relationship based on more than pure speculation or plaintiff's subjective intent to pursue a particular course of action. *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 243 (2005). "The tort protects the expectation the relationship will produce the desired benefit, not 'the more speculative expectation that a potentially beneficial relationship will arise.'" *Id.* (citation omitted). "[A]s a

1  matter of law, a threshold causation requirement exists for maintaining a cause of action for [this]
2  tort, namely, proof that it is reasonably *probable* that the lost economic advantage would have
3  been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)
4  (emphasis in original).

5        Plaintiff alleges Defendants interfered with his ability to complete a prerequisite class that
6  must be taken before Plaintiff can even apply for admission to the physician assistant programs.
7  [FAC ¶68.] Although California has long-recognized a cause of action for interference with one's
8  "right to pursue a lawful business, calling, trade or occupation," *Guillory v. Godfrey*, 134 Cal.
9  App. 2d 628, 632 (1955), the Court is unaware of any case in which a plaintiff successfully stated
10 a claim for relief based on facts as speculative as those present here. Not only does the FAC
11 require the Court to assume Plaintiff would have passed the class from which he was allegedly
12 expelled, but also that Plaintiff would have obtained admission to the additional prerequisite
13 classes, that Plaintiff would have obtained passing grades in those classes, that he would have
14 applied to one or more PA schools, *and* that one or more of the schools would have accepted his
15 application for admission. Plaintiff's alleged harm is simply too tenuous.

16       Contrary to Plaintiff's assertions, the present case is dissimilar from those he cites in which
17 the defendants interfered with the operation of plaintiffs' *existing* businesses by engaging in
18 conduct that deterred clients from patronizing the plaintiffs' establishments. *Guillory*, 134 Cal.
19 App. 2d 628 (defendant interfered with plaintiff's business by intimidating potential customers and
20 making disparaging remarks about the restaurant and its food); *Finney v. Lockhart*, 35 Cal. 2d 161
21 (1950) (competing business owner engaged in "campaign" to destroy plaintiff's reputation and pet
22 food business by making false statements to purchasers of dog food); *Colvig v. RKO Gen.*, 232
23 Cal. App. 2d 56 (1965) (defendants interfered with plaintiff's existing occupation as a radio
24 announcer). "For the most part the expectancies . . . protected [by the tort of interference with
25 prospective economic advantage] have been those of future contractual relations . . . . In such cases
26 there is a background of business experience on the basis of which it is possible to estimate with
27 some fair amount of success both the value of what has been lost and the likelihood that the
28 plaintiff would have received it if the defendant had not interfered." *Youst*, 43 Cal. 3d at 75. The

1  allegations in the FAC are simply too speculative and do not establish Plaintiff had an existing
2  economic relationship with a particular college that was likely to provide him future economic
3  benefit.
4        The FAC also fails to allege the second element necessary to state a claim for interference
5  with prospective economic relations—that Defendants had knowledge of the relationship that was
6  allegedly interrupted. There is no indication Defendants knew Plaintiff intended to apply to PA
7  colleges after completion of certain courses at the community college. Accordingly, Plaintiff's
8  ninth cause of action for "interference with prospective economic relations" is subject to dismissal.
9        Further, the Court finds leave to amend would be futile because Plaintiff's purported
10 economic relationship with the New York Institute of Technology, or any of the other four
11 unidentified colleges, is entirely speculative given the numerous intermediate steps Plaintiff must
12 take before a relationship could reasonably be established. [FAC ¶¶67-68.] Absent an existing
13 relationship, Plaintiff cannot show a likelihood that he would have received a benefit from the
14 school(s) if Defendants had not interfered; Plaintiff's desired future relationship with an
15 unspecified physician assistant program is too speculative to support a claim for relief. "Although
16 there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases
17 in which any amendment would be an exercise in futility." *Steckman v. Hart Brewing*, 143 F.3d
18 1293, 1298 (9th Cir. 1998) (citation omitted). Plaintiff's ninth cause of action for interference
19 with prospective economic relations is therefore subject to dismissal with prejudice.

20 **CONCLUSION**

21       For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss the
22 FAC, and **ORDERS** as follows:
23       (i)    Plaintiff first, second, third, fourth, fifth, sixth and eighth causes of action for
24           violations of his civil rights are **DISMISSED WITHOUT PREJUDICE**, with the
25           exception that Plaintiff's third claim for relief under Title IX is **DISMISSED**
26           **WITH PREJUDICE** to the extent it seeks relief from Defendants in their
27           individual and personal capacities; such relief is not available under Title IX.
28

(ii)  Plaintiff's fourth cause of action for age discrimination under 42 U.S.C. § 6101 *et seq*. is dismissed without prejudice, but **WITHOUT LEAVE TO AMEND**, because Plaintiff did not exhaust his administrative remedies prior to filing suit.

(iii)  Plaintiff's seventh cause of action for interference with contract is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

(iv)  Plaintiff's ninth cause of action for interference with prospective economic advantage is **DISMISSED WITH PREJUDICE** and without leave to amend, because amendment of this claim would be futile.

(v)  Plaintiff is **GRANTED** thirty (30) days from the date this Order is Filed in which to file a Second Amended Complaint which cures all the deficiencies of pleading noted above and is consistent with this Order. Plaintiff's Second Amended Complaint must be complete in itself without reference to the superseded pleading. *See* Civ. L.R. 15.1.

(vi)  Because Plaintiff is granted leave to file an amended complaint consistent with this Order, his pending motion for leave to file a second amended complaint [Doc. No. 25] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATED: June 17, 2011

Hon. Michael M. Anello
United States District Judge